## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) | |
| as successor by merger with Vision Bank | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-852-R |
| | ) | |
| RUSTON C. WELCH, | ) | |
| WELCH LAW FIRM, P.C. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff SE Property Holdings, LLC ("SEPH"), as successor by merger with Vision Bank ("Vision Bank"), alleges against Defendants Ruston C. Welch ("Welch") and Welch Law Firm, P.C. ("Welch Law Firm") as follows:[1]

## I.     THE PARTIES

1.     Plaintiff SEPH is an Ohio limited liability company with its principal place of business in Newark, Ohio.  SEPH's sole member is Park National

---

[1] SEPH has filed an action against Welch and Welch Law Firm that is currently pending in the United States District Court for the Southern District of Alabama as Civil Action Number 19-0624-C.  SEPH files the present suit as a "protective action" to prevent expiration of the statute of limitations in the unlikely event that personal jurisdiction fails in the Southern District of Alabama.  *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 294 n.9 (2005) ("There is nothing necessarily inappropriate, however, about filing a protective action.").

Corporation, an Ohio Corporation with its principal place of business in Newark, Ohio. SEPH is a citizen of the State of Ohio. SEPH is the successor by merger with Vision Bank, a Florida corporation, pursuant to a merger occurring on or about February 16, 2012. SEPH was the surviving entity.

2.     Defendant Welch is a citizen of the state of Oklahoma and is an attorney licensed in Oklahoma.

3.     Defendant Welch Law Firm is an Oklahoma professional corporation with its principal place business in Oklahoma. Upon information and belief, Welch is the owner of and sole attorney in Welch Law Firm. Welch is an agent of Welch Law Firm.

## II.     JURISDICTION AND VENUE

4.     The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because it is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because it is a judicial district in which Welch and Welch Law Firm reside.

## III.     FACTUAL ALLEGATIONS

### A. Preliminary Statement.

6.     SEPH brings this action against Welch and Welch Law Firm for fraudulent transfer, conversion, and other misconduct in connection with certain

funds in which SEPH held an interest, specifically the proceeds of Neverve, LLC's ("Neverve") claim against BP arising from the April 2010 Deepwater Horizon oil spill.

7.      According to Welch, Neverve has two 50% members – one residing in Oklahoma (David A. Stewart) and one residing in Alabama (George Skipper).

8.      David A. Stewart ("Stewart") has been, at material times hereto, a member of Neverve.  Stewart is a debtor in an involuntary Chapter 7 bankruptcy proceeding currently pending in the United States Bankruptcy Court for the Western District of Oklahoma.

9.      Welch is Stewart's counsel in the Chapter 7 bankruptcy case.

10.     Upon the entry of orders for relief in the Chapter 7 bankruptcy case, the Chapter 7 Trustee stepped into Stewart's shoes with regard to his membership interests in Neverve.

11.     SEPH believes that the Neverve BP proceeds at issue are property of Stewart's bankruptcy estate.  SEPH has filed a motion in the pending bankruptcy case for permission to seek turnover of the BP proceeds from Welch and Welch Law Firm on behalf of the bankruptcy estate.  The Bankruptcy Court has not yet ruled on that motion.  The Bankruptcy Court has also, however, indicated that this action may proceed even though the Chapter 7 bankruptcy case is pending.

**B. Vision Bank's Loans to Neverve, and SEPH's Judgment against Neverve.**

12.     SEPH's predecessor in interest, Vision Bank, loaned millions of dollars to Neverve.  To secure the loans, Neverve granted Vision Bank a mortgage in property located in Florida.

13.     After Neverve's default on the loans, SEPH foreclosed on the property.  *See SE Property Holdings, LLC v. Neverve, LLC*, Case No. 5:12cv292-RH/CJK (United States District Court for the Northern District of Florida).

14.     On June 18, 2015, the United States District Court for the Northern District of Florida issued a deficiency judgment in favor of SEPH against Neverve for a total sum of $19,661,891.08.  [*See id*., Doc. 83].  The judgment has not been satisfied.

15.     Stewart and his wife personally guaranteed Vision Bank's loans to Neverve.  SEPH sought and received summary judgment against Stewart and his wife individually in the United States District Court for the Southern District of Alabama in connection with their guarantees of Neverve's debt.  *See SE Property Holdings, LLC v. David A. Stewart, et al.*, Case No. 1:12-cv-00537-CB-M (United States District Court for the Southern District of Alabama).

**C. Neverve's BP Claim.**

16.     Neverve had a claim against BP arising from the April 2010 Deepwater Horizon oil spill.

17.    After foreclosure in Florida, Neverve's only known remaining asset to pay down SEPH's judgment was the BP claim.

**D. Vision Bank's Loans to Other Stewart-Related Entities and the Second Supplement.**

18.    In addition to loaning money to Neverve, Vision Bank loaned millions of dollars to other entities in which Stewart was an owner or principal.  These other entities include ZLM Acquisitions, LLC ("ZLM") and Zeke's Landing Marina, LLC ("Marina").

19.    Stewart personally guaranteed Vision Bank's loan to ZLM and Marina.

20.    To induce Vision Bank to extend the maturity date of the loan to ZLM and Marina, Stewart and other individuals and entities executed a Second Supplement to Loan Documents ("Second Supplement") on or about June 23, 2011, a copy of which is attached hereto as Exhibit 1.

21.    Stewart signed the Second Supplement on behalf of ZLM, Marina, certain "Affiliates," and himself personally as guarantor

22.    As stated in the Second Supplement, the parties intended that the borrowers and all affiliate companies of the borrowers (including any entity owned directly or indirectly in whole or in part by any owner or principal of any borrower, like David Stewart) pledge their respective BP claims and all proceeds from their BP claims as additional collateral to Vision Bank.  Specifically, the parties agreed:

> **Borrowers acknowledge and agree that the parties hereto intend that all subsidiary companies and affiliate companies of Borrowers are to be parties to this Agreement and are to pledge their respective BP collateral and bank accounts (discussed below) as collateral for the Loan**.  To ensure the foregoing and to induce Bank to enter into this Agreement and extend the maturity date of the loan, Borrowers and each Affiliate hereby represent and warrant unto Bank that there are no subsidiary or parent companies of any Borrower or any Affiliate, or any affiliate company of any Borrower (meaning any company owned directly or indirectly in whole or in part by any Borrower **or by any owner or principal of any Borrower [like David Stewart]**), that has filed or possesses any BP Claims that are not a party to this Agreement . . . .

Second Supplement, ¶ 3(d) (emphasis added).

23.    The Second Supplement intended to and did place a security interest over the BP claims and proceeds of all entities that David Stewart owned directly or indirectly, including Neverve.

## E. Welch's Representation of David Stewart in Bankruptcy Cases and his Purported Representation of Neverve.

24.    SEPH filed an involuntary bankruptcy as to David Stewart in the United States Bankruptcy Court for the Southern District of Alabama.  The Bankruptcy Court for the Southern District of Alabama entered orders for relief on March 18, 2015.

25.   The Bankruptcy Court for the Southern District of Alabama transferred the case to the United States Bankruptcy Court for the Western District of Oklahoma.

26.   Welch filed his Notice of Appearance as counsel for Stewart on June 17, 2015.

27.   Welch knew about SEPH's judgment against Neverve prior to August 3, 2016.

28.   Welch knew about the Second Supplement prior to August 3, 2016.

29.   Welch knew about SEPH's assertion of a security interest in the Neverve BP Proceeds prior to August 3, 2016.

30.   As early as July 29, 2015, Welch exchanged emails with David Stewart "regarding BP claims and avoidance of SEPH lien on Neverve claim."

31.   On August 21, 2015, Welch had a telephone conference with "Stewart regarding SEPH filing against Neverve BP claim."

32.   On October 7, 2015, counsel for SEPH introduced the Second Supplement as an exhibit in David Stewart's Bankruptcy Rule 2004 examination. Counsel for SEPH examined Stewart regarding the Second Supplement. Welch represented Stewart in that deposition.

33.   In December 2015, Welch examined the Chapter 7 Trustee concerning the Second Supplement in a proceeding before the Bankruptcy Court.

34.    Counsel for SEPH also examined another deponent (Linda McGuire) concerning the Second Supplement, and particularly the intent that it covers any of Stewart's affiliates, in May 2016.  Welch participated in that deposition as well.

35.    In January 2016, but purportedly effective June 17, 2015, Welch had Stewart execute a "Representation Agreement" on behalf of the "Stewart Related Entities" defined as "Affiliates", including Neverve.  The Scope of Engagement for Neverve and the other affiliates was very broad and included "general representation, debt counseling, corporate structure and bankruptcy representation . . . ."  In the Representation Agreement, Neverve also purportedly guaranteed to pay Welch's legal fees, including fees in connection with the Stewarts' "pending Chapter 7 bankruptcy cases."  Welch has argued that Neverve is one of the "Affiliates" that guaranteed to pay the Stewarts' legal fees.

36.    Because the Chapter 7 Trustee had stepped into Stewart's shoes as an owner of Neverve, the decision whether Neverve should guaranty Welch's fees was for the Trustee to make.  However, neither Welch nor Stewart obtained the Trustee's permission or even consulted with the Trustee regarding execution of the Representation Agreement or Neverve's guaranty of Stewart's legal fees for his individual bankruptcy.  Upon information and belief, no other owner of Neverve, if any, approved the Representation Agreement.  The Representation Agreement is, therefore, invalid.

37.    The existence of the Representation Agreement and purported guaranty arrangement was not disclosed to the Trustee, SEPH, or the Bankruptcy Court, until more than a year and a half later, after the Bankruptcy Court specifically ordered Welch to file his required Bankruptcy Rule 2016 disclosures concerning his compensation.    Welch did not file any Rule 2016 disclosures until September 14, 2017.

38.    In November 2018, Neverve purportedly retained Welch under a separate Representation Agreement with regard to "prospective litigation" with SEPH.

**F. The Fraudulent Transfer and Conversion of the Neverve BP Proceeds.**

39.    Aside from his representation of Stewart in the Chapter 7 bankruptcy cases, Welch purports to have represented Neverve as co-counsel with regard to Neverve's claim against BP.    Neverve's BP claim alleged that its Florida "development suffered economically" as a result of the spill and that Neverve's "failure to develop" the Florida property was caused by the spill.

40.    Neverve retained an Alabama law firm, Taylor Martino P.C. ("Taylor Martino"), to assert its BP claim.

41.    In 2016, Welch Law Firm entered into a purported contingency fee sharing agreement with the Alabama firm with regard to the BP claims "of the David Stewart related entities."    The contingency fee sharing agreement

9

specifically identified certain entities to which it applied, including three Alabama limited liability companies.  The fee sharing agreement did not list Neverve as an entity to which it applied.  Although the fee sharing agreement states that the Stewart entities consented, the Chapter 7 Trustee was never consulted about and did not consent to any fee sharing arrangement.  Because the Trustee, who owned and controlled interests in Neverve through Stewart's membership interests, did not authorize the fee sharing agreement, it is invalid as to Neverve.

42.    The Neverve BP claim, for which Welch contends he was acting as co-counsel, "was administered, filed, litigated, and settled in Alabama [and other states.]"  [Welch Declaration, ¶ 43].

43.    According to Welch, "[f]rom Oklahoma, [Welch Law Firm and Welch] provided co-counsel services and assistance pursuant to the Fee Sharing Agreement to the Taylor Martino law firm in Alabama in connection with their representation, litigation and settlement of the Stewart related entities' Opt-Out BP Claims in Alabama and Louisiana."  [Welch Declaration, ¶ 46].

44.    In 2016, Neverve settled its BP claim.

45.    After settlement, Taylor Martino received the settlement funds by wire transfer to its IOLTA trust account.

46.    On August 3, 2016, Welch Law Firm received a wire transfer of $73,638.45 into its IOLTA Trust Account purportedly representing its portion of

an alleged but unauthorized contingency fee from Neverve's BP claim. Welch Law Firm purportedly received these fees pursuant to its Fee Sharing Agreement with the Alabama firm Taylor Martino.

47.     A security interest in favor of SEPH attached to the $73,638.45 as Neverve BP proceeds.

48.     On August 3, 2016, Welch Law Firm received a separate wire transfer of $275,572.27 into its IOLTA Trust Account for the benefit of Neverve. The $275,572.27 were the net proceeds from Neverve's BP claim. Welch Law Firm received these net proceeds from Taylor Martino's Trust Account in Alabama.

49.     A security interest in favor of SEPH attached to the $275,572.27 as Neverve BP proceeds.

50.     Despite the Chapter 7 Trustee being an owner of Neverve, and despite SEPH having a security interest in the Neverve BP proceeds, Welch, Welch Law Firm, Neverve, and Stewart concealed the existence of the Neverve BP proceeds from the Chapter 7 Trustee and SEPH.

51.     Welch and Welch Law Firm did not turn the Neverve BP proceeds over to SEPH or the Chapter 7 Trustee.

52.     Welch began transferring the so-called contingency fee portion of Neverve's BP proceeds from his IOLTA Trust Account to Welch Law Firm to pay for Stewart's Chapter 7 attorney's fees.

53.     At Stewart's direction, Welch also began transferring the Neverve BP net proceeds from his IOLTA Trust Account to Welch Law Firm to pay for Stewart's personal Chapter 7 attorney's fees.

54.     Neverve, in its purported relationship with the Welch Defendants as both client and guarantor, paid the Welch Defendants over $277,451 between August 3, 2016 and September 20, 2017.

55.     Though Welch was required to disclose the source of his compensation in the bankruptcy proceeding pursuant to 11 U.S.C. § 329 and Bankruptcy Rule 2016(b), he failed to disclose that the Neverve BP proceeds were being used to pay Stewart's Chapter 7 attorney's fees.

56.     Welch failed to disclose this required information because he wanted to conceal the fraudulent transfer and conversion of the Neverve BP proceeds.

57.     The Bankruptcy Court ultimately ordered Welch to file his required Bankruptcy Rule 2016 disclosures.  Welch did not file any Rule 2016 disclosures until September 14, 2017.

58.     Later, the Bankruptcy Court sanctioned Welch $25,000 for his failure to disclose the source and amount of his attorney's fees in connection with Stewart's Chapter 7 bankruptcy.

59.     The Bankruptcy Court held that Welch failed to disclose $348,404.41 of payments, which included $277,451 from Neverve.  The Bankruptcy Court

found that Welch's failure to disclose the amount and source of his fees and expenses for the bankruptcy and related adversary proceedings and making such disclosures only after directed by the Bankruptcy Court to do so constitutes a clear violation of § 329 and Rule 2016(b). The Bankruptcy Court held that this nondisclosure was not "a mere technical violation." The Bankruptcy Court found it "incredulous that Welch would pay himself $348,404 in fees related to the bankruptcy over a two year period and not deem it appropriate to make *any* disclosure of the same before being ordered to do so by the Court."

60. The Bankruptcy Court stated that it "cannot help but view the non-disclosure of the attorney's fees not as an isolated event but one within the broader context and history of this [bankruptcy] case, **in particular with regard to the lack of candor and veracity of the Debtors [Stewart and his wife].**" The Bankruptcy Court noted that it "openly expressed its concern as to whether the Debtors have been forthcoming in disclosing all of their and the non-debtor affiliates' assets and an accurate value of those assets. **This lack of candor has extended to the attorney's fees Welch has been paid.**"

61. The Bankruptcy Court further stated that "**the seriousness of the non-disclosure of attorney's fees is further compounded by evidence of additional lack of candor concerning the fees.**" During a deposition in June 2017, nearly a year after Welch Law Firm had received the Neverve BP proceeds, counsel for

13

SEPH directly asked Stewart during a deposition whether any proceeds or payments of funds had been paid on Neverve's BP claim. Stewart answered, "I don't know," which neither Welch Law Firm nor Welch corrected though knowing the statement was false.

62.     Stewart was obviously concealing that Neverve's BP proceeds had been received by Welch Law Firm and used to pay Welch's attorney's fees. As stated by the Bankruptcy Court, "[i]t strains credulity that Stewart didn't know the source of the payments [for his Chapter 7 attorney's fees] was the BP settlement funds."

63.     Welch represented Stewart in the deposition and knew the truth, but he failed to disclose that Neverve had received BP proceeds or that the proceeds had been transferred to Welch Law Firm to pay Stewart's Chapter 7 attorney's fees.

64.     In fact, when counsel for SEPH directly asked how much Welch had been paid in connection with the bankruptcy proceeding, Welch flatly refused to disclose that information.

65.     Despite the egregiousness of Welch's violation, the Bankruptcy Court, in ruling on whether Welch should be required to disgorge all the fees based on a failure to disclose, specifically held that "ordering disgorgement of all fees . . . (or

even a substantial portion of such fees) would be financially catastrophic to someone as Welch engaged largely in solo practice."[2]

66.    Welch and Welch Law Firm acted in collusion with Neverve and its principal, Stewart, in violating the rights of SEPH.

67.    Welch and Welch Law Firm affirmatively engaged in wrongful conduct by actively concealing that Welch Law Firm had received Neverve BP proceeds and, further, that Welch was using those Neverve BP proceeds to pay himself for Stewart's Chapter 7 attorney's fees.  Welch's concealment was also a violation of 11 U.S.C. § 329 and Bankruptcy Rule 2016(b), as held by the Bankruptcy Court.

68.    In May and June of 2018, the Welch Defendants received an additional $70,397.76 from Neverve.

69.    Neverve did not receive reasonably equivalent value for the BP proceeds transferred to Welch Law Firm to pay for Stewart's personal Chapter 7 attorney's fees.

---

[2] The Bankruptcy Court, in sanctioning Welch for his failure to disclose under § 329 and the Bankruptcy Rules, did not determine whether the funds are otherwise recoverable under any of SEPH's causes of action raised in this matter.  The Bankruptcy Court has recognized that SEPH is free to bring this separate action against these Defendants.

70.    The Chapter 7 Trustee has testified that a Chapter 7 debtor would not have the authority to pay attorney's fees from a limited liability company to the debtor's attorney.

71.    The Chapter 7 Trustee further testified that he could not see any reason that the BP proceeds would be used to pay Welch for attorney's fees for his representation in the Chapter 7 bankruptcy cases.

## COUNT ONE

### Uniform Fraudulent Transfer Act – Actual Fraud

### (Ala. Code § 8-9A-4(a) and 24 Okla. Stat. § 116(A)(1))

### (Against Welch and Welch Law Firm)

72.    SEPH incorporates the preceding allegations as if set forth herein.

73.    SEPH is a creditor of Neverve and received a judgment against Neverve for more than $19 million on June 18, 2015.

74.    The BP proceeds were property of Neverve that could have been applied to the payment of the debt due to SEPH.

75.    The transfer of Neverve's BP proceeds from Welch Law Firm's IOLTA Trust Account to Welch Law Firm and to Welch was fraudulent as to SEPH because the transfer was made with the actual intent to hinder, delay, or defraud SEPH.

76.    The transfer carries numerous badges of fraud.

77.     The transfer was made to or for the benefit of an insider.  The transfer was made to Welch Law Firm for the benefit of Stewart, the bankrupt principal of Neverve.  The transfer was to pay Welch for Stewart's personal Chapter 7 bankruptcy attorney's fees.

78.     The obligation and transfer were both concealed.  Welch, Welch Law Firm, Neverve, and Stewart concealed that Stewart signed a Representation Agreement requiring Stewart's entities to guaranty Welch's attorney's fees. Welch, Welch Law Firm, Neverve, and Stewart also concealed the existence of the Neverve BP proceeds and that the Neverve BP proceeds were being used to pay Welch for Stewart's Chapter 7 attorney's fees.  The Bankruptcy Court later found that Welch's failure to disclose the amount and source of his fees and expenses constituted a clear violation of § 329 and Rule 2016(b).

79.     Before the transfer was made, SEPH had sued Neverve and received a judgment for more than $19 million against Neverve.

80.     The transfer was substantially all of Neverve's assets.  At the time, the BP proceeds were Neverve's only remaining assets.  Welch transferred all, or substantially all, of the Neverve BP proceeds to himself.

81.     Welch, Welch Law Firm, Neverve, and Stewart concealed from SEPH, the Trustee, and the Bankruptcy Court the receipt of the BP proceeds for more than a year.

82.     Neverve did not receive consideration that was reasonably equivalent to the value of the BP proceeds transferred to Welch Law Firm.

83.     Neverve owed a judgment to SEPH for over $19 million.  Its only remaining assets were the BP proceeds.  Neverve was, therefore, insolvent.

WHEREFORE, SEPH demands (i) judgment against Welch and Welch Law Firm for compensatory and punitive damages in an amount to be determined by the Court, including prejudgment interest, plus SEPH's attorney's fees and expenses incurred in this proceeding and the costs of this proceeding, and (ii) that the Court set aside each of said fraudulent transfers and declare each such transfer (and any subsequent transfer of any such property) null and void.  SEPH requests such other, different and additional relief as the Court may deem proper, the premises considered.

## COUNT TWO

### Uniform Fraudulent Transfer Act – Constructive Fraud

### (Ala. Code § 8-9A-4(c) and 24 Okla. Stat. § 116(A)(2))

### (Against Welch and Welch Law Firm)

84.     SEPH incorporates the preceding allegations as if set forth herein.

85.     SEPH is a creditor of Neverve and received a judgment against Neverve for more than $19 million on June 18, 2015.

86.   The BP proceeds were property of Neverve that could have been applied to the payment of the debt due to SEPH.

87.   Neverve transferred the BP Proceeds to Welch Law Firm without receiving reasonably equivalent value in exchange for the transfer.

88.   Neverve (1) was engaged in a business transaction for which its remaining assets were unreasonably small in relationship to the business or transaction and/or (2) intended to incur (or believed or reasonably should have believed that it would incur) debts beyond its ability to pay as they became due.

WHEREFORE, SEPH demands (i) judgment against Welch and Welch Law Firm for compensatory and punitive damages in an amount to be determined by the Court, including prejudgment interest, plus SEPH's attorney's fees and expenses incurred in this proceeding and the costs of this proceeding, and (ii) that the Court set aside each of said fraudulent transfers and declare each such transfer (and any subsequent transfer of any such property) null and void.   SEPH requests such other, different and additional relief as the Court may deem proper, the premises considered.

## COUNT THREE

## Uniform Fraudulent Transfer Act – Constructive Fraud

## (Ala. Code § 8-9A-5 and 24 Okla. Stat. § 117(A))

### (Against Welch and Welch Law Firm)

89.     SEPH incorporates the preceding allegations as if set forth herein.

90.     SEPH is a creditor of Neverve and received a judgment against Neverve for more than $19 million on June 18, 2015.

91.     SEPH's claim against Neverve arose before the series of transfers of BP proceeds to Welch Law Firm, which began on or after August 3, 2016.

92.     The BP proceeds were property of Neverve that could have been applicable to the payment of the debt due to SEPH.

93.     Neverve transferred the BP proceeds to Welch Law Firm without receiving a reasonably equivalent value in exchange for the transfers.

94.     Neverve was insolvent at the time of the transfers.

WHEREFORE, SEPH demands (i) judgment against Welch and Welch Law Firm for compensatory and punitive damages in an amount to be determined by the Court, including prejudgment interest, plus SEPH's attorney's fees and expenses incurred in this proceeding and the costs of this proceeding, and (ii) that the Court set aside each of said fraudulent transfers and declare each such transfer (and any subsequent transfer of any such property) null and void.   SEPH requests such

other, different and additional relief as the Court may deem proper, the premises considered.

## COUNT FOUR

### Conversion

### (Against Welch and Welch Law Firm)

95.    SEPH incorporates the preceding allegations as if set forth herein.

96.    Welch and Welch Law Firm wrongfully asserted dominion over Neverve's BP proceeds.

97.    SEPH had a security interest in and right to possess Neverve's BP Proceeds.

98.    Welch's and Welch Law Firm's conversion of or wrongful interference with the Neverve BP proceeds was inconsistent with SEPH's ownership and/or security interest in the Neverve BP proceeds.

WHEREFORE, SEPH demands judgment against Welch and Welch Law Firm for compensatory and punitive damages in an amount to be determined by the Court, including prejudgment interest, plus SEPH's attorney's fees and expenses incurred in this proceeding and the costs of this proceeding.  SEPH requests such other, different and additional relief as the Court may deem proper, the premises considered.

## COUNT FIVE

## Civil Conspiracy

## (Against Welch)

99.     SEPH incorporates the preceding allegations as if set forth herein.

100.    Welch conspired and agreed with Welch Law Firm, Neverve, and/or David Stewart to do an unlawful act or to do a lawful act by unlawful means, specifically to fraudulently transfer the Neverve BP proceeds.

101.    Welch, Welch Law Firm, Neverve, and/or David Stewart[3] committed one or more overt acts in pursuance of the conspiracy, including: (1) concealing the receipt of Neverve BP proceeds; (2) fraudulently transferring Neverve's BP proceeds to Welch Law Firm; (3) failing to disclose that the Neverve BP proceeds were being transferred to Welch Law Firm to pay for Stewart's Chapter 7 attorney's fees in violation of 11 U.S.C. § 329 and Bankruptcy Rule 2016(b); (4) Stewart's testifying falsely under oath that he did not know whether Neverve had received BP proceeds; and (5) Welch's failure to correct Stewart's false testimony and outright refusal to disclose the amount of his compensation.

102.    Welch aided and abetted the fraudulent transfer.

103.    Welch controlled and benefitted from the assets that were fraudulently transferred to his law firm.

_____

[3] SEPH is not seeking recovery against David Stewart in this Amended Complaint.

22

104.   SEPH suffered damage as a result of the acts done under the conspiracy.

WHEREFORE, SEPH demands judgment against Welch for compensatory and punitive damages in an amount to be determined by the Court, including prejudgment interest, plus SEPH's attorney's fees and expenses incurred in this proceeding and the costs of this proceeding.   SEPH requests such other, different and additional relief as the Court may deem proper, the premises considered.

## COUNT SIX

## Unjust Enrichment[4]

## (Against Welch and Welch Law Firm)

105.   SEPH incorporates the preceding allegations as if set forth herein.

106.   Welch and Welch Law Firm were unjustly enriched as a result of the transfer of the Neverve BP Proceeds.

107.   SEPH was impoverished by the transfer of Neverve's funds to Welch and Welch Law Firm because those funds could have been applicable to the payment of Neverve's debt due to SEPH.

---

[4] SEPH pleads a claim for unjust enrichment in the alternative to its claims for remedies at law.

108.   There is a connection between Welch's and Welch Law Firm's enrichment and SEPH's impoverishment.

109.   Welch and Welch Law Firm lacked justification for the transfers.

110.   SEPH lacks remedies at law.

WHEREFORE, SEPH demands judgment against Welch for its unjust enrichment in an amount to be determined by the Court, including prejudgment interest, plus SEPH's attorney's fees and expenses incurred in this proceeding and the costs of this proceeding.  SEPH requests such other, different and additional relief as the Court may deem proper, the premises considered.

## COUNT SIX

### Constructive Trust

### (Against Welch and Welch Law Firm)

111.   SEPH incorporates the preceding allegations as if set forth herein.

112.   Welch and Welch Law Firm, by commission of a wrong, by unconscionable conduct, concealment, or questionable means, against equity and good conscience, obtained or hold property which they ought not, in equity and good conscience hold and enjoy.

113.   It would be inequitable to allow Welch and Welch Law Firm to retain the Neverve BP proceeds.

114.   There was active wrongdoing on the part of Welch and Welch Law Firm.

WHEREFORE, SEPH demands that the Court impose a constructive trust on the Neverve BP proceeds.  SEPH requests such other, different and additional relief as the Court may deem proper, the premises considered.

## COUNT SIX

### Equitable Lien

**(Against Welch and Welch Law Firm)**

115.   SEPH incorporates the preceding allegations as if set forth herein.

116.   SEPH asserts that it has and, at all material times hereto, had a valid security interest in and rights to possess Neverve's BP proceeds under the language of the Second Supplement executed by David Stewart.  In the unlikely event that the Court finds that the Second Supplement does not give SEPH a secured interest in Neverve's BP proceeds, SEPH asserts that it has an equitable lien against Neverve's BP proceeds.

117.   Neverve, Welch Law Firm, and Welch were aware of the Second Supplement at the time Welch and Welch Law Firm received the Neverve BP proceeds and were aware that the Second Supplement showed the intent to charge Neverve's interest in the BP proceeds with a security interest.

118.   The BP proceeds were property of Neverve that could and should have been applied to the debt due to SEPH.

119.   Neverve transferred the BP proceeds to Welch and Welch Law Firm without receiving reasonably equivalent value in exchange for the transfer.

120.   The Trustee, who owned and controlled interests in Neverve through Stewart's membership agreement, did not authorize the transfer of the Neverve BP proceeds to Welch Law Firm.

121.   Welch and the Welch Law Firm received and retained the Neverve BP proceeds through fraud, including fraudulent transfers (actual and constructive fraud), acts of deception, lack of candor, and unclean hands in connection with the receipt of Neverve's BP proceeds and the payments of those proceeds to Welch.  In fact, Welch, Welch Law Firm, Neverve, and Stewart actively concealed from SEPH, the Trustee, and the Bankruptcy Court the receipt of the Neverve BP proceeds and transfer of those proceeds to Welch for more than a year in violation of federal law and Bankruptcy Rules.

122.   By receiving and retaining the Neverve BP proceeds, which should have been paid to SEPH, Welch and Welch Law Firm have been unjustly enriched.

123.   Equity demands that Neverve, Welch, and Welch Law Firm be estopped from denying SEPH's entitlement to a lien against the Neverve BP proceeds.

124.   Considerations of right and justice require that SEPH be granted an equitable lien against the Neverve BP proceeds fraudulently received and retained by Welch and the Welch Law Firm.

WHEREFORE, SEPH demands an equitable lien against the Neverve BP proceeds fraudulently received and retained by Welch and the Welch Law Firm.

Respectfully submitted,

/s/ Mark B. Toffoli
Mark B. Toffoli  OBA # 9045
THE GOODING LAW FIRM
A PROFESSIONAL CORPORATION
204 North Robinson Avenue, Suite 650
Oklahoma City, Oklahoma 73102
Telephone:  (405) 948-1978
Telefacsimile:  (405) 948-0864
Email: cgooding@goodingfirm.com
Email: mtoffoli@goodingfirm.com

-and-

/s/ S. Fraser Reid, III
RICHARD M. GAAL (Pro Hac Motion to be Filed)
rgaal@mcdowellknight.com

S. FRASER REID, III (Pro Hac Motion to be Filed)
freid@mcdowellknight.com

OF COUNSEL:

MCDOWELL KNIGHT ROEDDER
  & SLEDGE, LLC
11 North Water St., Ste. 13290
Mobile, Alabama  36602
(251) 432-5300
(251) 432-5303 (fax)

**DEFENDANTS TO BE SERVED BY PROCESS SERVER:**

Ruston C. Welch
4101 Perimeter Center Dr., Ste. 360
Oklahoma City, OK 73112-2309

Welch Law Firm, P.C.
4101 Perimeter Center Dr., Ste 360
Oklahoma City, OK 73112-2309